1
2
3
4
5
6
7

8              **IN THE UNITED STATES DISTRICT COURT**

9              **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    DONALD CLARENCE CHAMBERS,              No.  2:19-CV-0582-JAM-DMC

12              Plaintiff,

13         v.                                <u>FINDINGS AND RECOMMENDATIONS</u>

14    JIM BENTLEY, et. al,

15              Defendants.

16

17              Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

18    42 U.S.C. § 1983. Pending before the Court are defendants' motion for summary judgment (ECF

19    No. 21); plaintiff's opposition (ECF No. 24); and defendants' reply (ECF No. 25).

20

21                        **I. PLAINTIFF'S ALLEGATIONS**

22              Plaintiff, Donald Clarence Chambers, is an inmate at California State Prison,

23    Solano (CSP Solano)[1]. Plaintiff names the following defendants: (1) Doctor Jim Bentley[2],

24    Physician at CSP Solano, (2) Miguel Aguilera, Registered Dietician at CSP Solano, and Doctor

25    Martin Kuersten, Chief Medical Executive at CSP Solano.

26    _____

27        [1]      Plaintiff erroneously refers to California State Prison Solano as Solano State
      Prison, Vacaville in his original complaint.
28        [2]      Doctor Bentley is deceased. <u>See</u> ECF No. 12.

                                    1

1     Plaintiff alleges that defendants violated his Eighth Amendment rights by

2 repeatedly refusing to provide him with a soy-free diet despite his soy allergy. See ECF No. 1, pg.

3 5. Plaintiff claims he saw Dr. Bentley for symptoms reminiscent of a soy allergy on April 20,

4 2018, April 27, 2018, and June 5, 2018. See ECF No. 24, pg. 2. Plaintiff claims he first met with

5 defendant Aguilera on June 14, 2018. See ECF No. 24, pg. 2. Plaintiff alleges that Aguilera told

6 plaintiff that plaintiff could not get on a soy-free diet until his soy allergy was confirmed through

7 a medical test. Id.

8     Plaintiff claims that Doctor Mo, who is not named as a defendant, ordered a

9 soybean allergy test for plaintiff on June 29, 2018. Id. Plaintiff alleges he had a blood test for the

10 soybean allergy test on July 3, 2018. Id. Plaintiff alleges that Doctor Bentley told plaintiff that he

11 tested positive for a soybean allergy on the IgG test with a 2.1 score on July 12, 2018. Id. Plaintiff

12 also alleges that Doctor Bentley ordered him a soy-free therapeutic diet at this time. Id.

13     Plaintiff claims he went to retrieve his first therapeutic meal on July 13, 2018. See

14 ECF No. 1, pg. 4. Plaintiff alleges that he suffered the same side effects from the therapeutic meal

15 as the mainline prison meals. Id. Plaintiff claims that he realized the kitchen had been providing

16 him gluten-free meals rather than soy-free meals on July 14, 2018. Id.  Plaintiff alleges that the

17 kitchen staff told him they were instructed to provide him with gluten-free meals by the dietician

18 on July 14, 2018, July 15, 2018, July 16, 2018, and July 17, 2018. Id. Plaintiff claims that he

19 began collecting the labels on his meals on July 18, 2018. Id.

20     Plaintiff claims that on July 25th, 2018, a member of the kitchen staff handed him

21 a bag labeled "no soy" that contained a meal with soy products. See ECF No. 1, pg. 3. Plaintiff

22 claims that the kitchen staff told him that Aguilera instructed them to give the bag to plaintiff. Id.

23 Plaintiff alleges that Doctor Bentley cancelled his soy-free diet on July 26, 2018 by falsely

24 claiming that plaintiff refused the meals. See ECF No. 1, pg. 3. Plaintiff claims that defendant

25 Doctor Kuersten ordered a second allergy test for plaintiff on August 22, 2018. Id. Plaintiff

26 alleges that although he underwent a blood test, Dr. Kuersten stopped the blood analysis from

27 occurring. Id. Plaintiff claims that Dr. Keursten then fabricated a false report from Quest

28 Diagnostics stating that plaintiff did not have a soy allergy. See ECF No. 1, pg. 4.

1    Plaintiff claims he once again saw Dr. Bentley on September 11, 2018. See ECF

2  No. 1, pg. 4. Plaintiff alleges that Dr. Bentley provided him with a copy of Dr. Kuersten's

3  medical report and stated that the new allergy test indicated plaintiff did not have an allergy to

4  soy. Id. Plaintiff claims that he asked Dr. Bentley why he discontinued plaintiff's therapeutic diet.

5  Id. Plaintiff claims Dr. Bentley replied that he cancelled the diet because plaintiff did not have a

6  soy allergy, and plaintiff retorted that Dr. Bentley cancelled his diet a month before the most

7  recent test results arrived. Id. Plaintiff claims that Dr. Bentley then made him leave the medical

8  facility. Id.

9    Plaintiff claims he contacted Quest Diagnostics for his test results on October 11,

10  2018. See ECF No. 1, pg. 4. Plaintiff claims that although Quest initially refused to speak to him,

11  a Quest representative eventually told plaintiff that there were no test results on file under his

12  name. See ECF No. 1, pg. 5.

13

14                              **II. PROCEDURAL HISTORY**

15    On April 3, 2019, plaintiff filed his prisoner civil rights complaint against Bentley,

16  Aguilera, and Kuersten, alleging that their conduct violated his right to medical treatment under

17  the Eighth Amendment. See ECF No. 1. The summons for Doctor Bentley was not executed

18  because he was deceased. See ECF No. 12. On September 3, 2019, defendants filed an answer to

19  plaintiff's civil rights complaint. See ECF No. 19. Defendants then filed their motion for

20  summary judgment on November 6, 2019. See ECF No. 21. Plaintiff filed his opposition to

21  defendants' motion for summary judgment on March 2, 2020. See ECF No. 24. Defendants

22  submitted their reply to plaintiff's opposition to summary judgment on March 4, 2020. See ECF

23  No. 25. The Court now reviews defendants' motion for summary judgment.

24  ///

25  ///

26  ///

27  ///

28  ///

### III. STANDARD FOR SUMMARY JUDGMENT

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

> Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987). To demonstrate that an issue is genuine, the opposing party "must do more than

1   simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record

2   taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

3   'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  It is sufficient that "the

4   claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions

5   of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.

6         In resolving the summary judgment motion, the court examines the pleadings,

7   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.

8   See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, see Anderson,

9   477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the

10  court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587.

11  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

12  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

13  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

14  1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the

15  judge, not whether there is literally no evidence, but whether there is any upon which a jury could

16  properly proceed to find a verdict for the party producing it, upon whom the onus of proof is

17  imposed." Anderson, 477 U.S. at 251.

18

19  **IV. THE PARTIES' EVIDENCE**

20      A.     **Defendants' Evidence**

21        Defendants' motion for summary judgment is supported by the following sworn

22  declarations: 1) M. Kuersten, ECF No. 21-4 and 2) M. Aguilera, ECF No. 21-5. Defendants also

23  submit a statement of undisputed facts discussed below in section (IV)(C).

24  ///

25  ///

26  ///

27  ///

28  ///

1

**B.**     **Plaintiff's Evidence**

In support of his opposition, plaintiff relies on his own sworn declaration, ECF No. 24, pgs. 2-5, and the following exhibits:

| | | |
|---|---|---|
| Exhibit A | | Plaintiff's Patient Discharge Instructions from Medical Examinations on April 20, 2018, April 27, 2018, and June 12, 2018. ECF 24, pgs. 34-38. |
| Exhibit B | | Plaintiff's Medical Consultation Order and Progress Notes for May 24, 2018. Id. at 39-40. |
| Exhibit C | | Plaintiff's Patient Discharge Instructions for June 29, 2018 and Medical Test Order for June 29, 2018. Id. at 41-42. |
| Exhibit D | | Plaintiff's IgG test results from July 9, 2018 and Plaintiff's Medical Orders from July 12, 2018. Id. at 43-45. |
| Exhibit E | | Plaintiff's Patient Discharge Instructions for a Medical Visit on September 11, 2018, Plaintiff's Medical Orders from August 22, 2018, and Plaintiff's IgE Test Results. Id. at 46-50. |
| Exhibit F | | Plaintiff's Medical Order on May 24, 2018, Plaintiff's Food Labels, and a Brown Paper Bag Labeled with Plaintiff's Name and "No Soy". Id. at 51-60. |
| Exhibit G | | Plaintiff's Medical Order for August 23, 2018, Plaintiff's Miscellaneous Stool Test Results, a Copy of Plaintiff's Inmate Financial Statement Report, Two Duplicative Copies of Plaintiff's IgG Test Results, Plaintiff's Correspondences with Quest Diagnostics, Letters Informing Plaintiff He Had Exhausted All Prison Remedies, and Plaintiff's Medical Records for Other Providers from April 15, 2019, and April 9, 2020. Id. at 61-81. |
| Exhibit H | | Plaintiff's External Movement History, an Index of Institutions Providing Outpatient Therapeutic Diets, Email Correspondence Between Bentley and Aguilera, Medical Orders from July 25, 2018 to July 27, 2018, Progress Notes from September 12, 2018, Duplicative Lab Order Request from August 22, 2018, Defendant Kuersten's Responses to Requests for Production of Documents, Defendant Aguilera's Response to Request for Admissions, and Defendants' Responses to Requests for Production of Documents. Id. at 82-104. |

///

6

C.      **Defendant's Statement of Undisputed Facts and Plaintiff's Response**

The following are: 1) defendants' Statement of Undisputed Facts, ECF No. 21-2; and 2) plaintiff's responses, ECF No. 24, pgs. 6-18.

| Defendants' Statement | Plaintiff's Response |
| --- | --- |
| 1. Mr. Chambers has been housed at California State Prison, Solano since September 2015. <br><br> (Declaration of Dr. Kuersten in Support of Motion for Summary Judgment (Dr. Kuersten Decl.) ¶3) | 1. Deny. Plaintiff arrived at California State Prison, Solano on August 10, 2017. <br><br> (Exhibit H, pg. 82[3] in Opposition to Motion for Summary Judgment). |
| 2. Mr. Chambers was never diagnosed with a soy allergy prior to being at California State Prison, Solano. <br><br> (Dr. Kuersten Decl. ¶3) | 2. Admit. |
| 3. Mr. Chambers claimed that he had a soy allergy and requested a soy free diet in 2018. <br><br> (Declaration of M. Aguilera (Aguilera Decl.) ¶2.) | 3. Deny. Plaintiff saw Dr. Bentley on April 20, 2018, April 27, 2018, June 5, 2018, and June 12, 2018. Plaintiff claims he requested an allergy test at each of those visits but Dr. Bentley refused. <br><br> (Exhibit A, pgs. 1-5 in Opposition to Motion for Summary Judgment). |
| 4. Dr. Bentley ordered an IgG test to evaluate soy sensitivity and referred Mr. Chambers to a dietician. <br><br> (7/3/18 Quest Lab Result Exhibit A to Dr. Kuersten Decl., Aguilera Decl. ¶ 2.) | 4. Deny. Dr. Bentley did not order plaintiff's IgG test. Plaintiff admits Dr. Bentley referred him to a dietician. <br><br> (Exhibit C, pgs. 41-42 in Opposition to Motion for Summary Judgment). |
| 5. The IgG test is not used to diagnose allergies. <br><br> (7/3/18 Quest Lab Result Exhibit A to Dr. Kuersten's Decl.,  Dr. Kuersten's Decl. ¶3, lines 13-16.) | 5. Deny. The IgG test is used to test diagnose allergies. <br><br> (Exhibit D, pgs. 43-44, Exhibit G pgs. 75-79 in Opposition to Motion for Summary Judgment). |

---

[3]      Plaintiff used his own numbering system for his exhibits and uses this numbering system to cite to pages in his exhibit. The page numbers listed in this document reflect the page number where the reference can be found within the ECF page count of plaintiff's Opposition to Motion for Summary Judgment.

| | |
|---|---|
| 6. The IgG test showed Mr. Chambers had a borderline sensitivity to soy.<br><br>(7/3/18 Quest Lab Result Exhibit A to Dr. Kuersten's Decl., Dr. Kuersten Decl. ¶3, line 11.) | 6. Deny. Plaintiff is allergic to soy rather than just having a borderline sensitivity to soy.<br><br>(Exhibit D, pg. 44, Exhibit G pg. 77in Opposition to Motion for Summary Judgment).[4] |
| 7. On June 14, 2018, registered dietician M. Aguilera met with Mr. Chambers. Mr. Chambers requested a soy free diet.<br><br>(Aguilera Decl. ¶2.) | 7. Deny. Plaintiff did not meet with Aguilera on June 14, 2018.<br><br>(Plaintiff claims that Aguilera has no record of the meeting outside of his declaration.) |
| 8. California State Prison, Solano does not have a soy free diet available.<br><br>(Aguilera Decl. ¶2, line 25, Dr. Kuersten Decl. ¶4, lines 20-21.) | 8. Deny. California State Prison is one of the 22 prisons that provide therapeutic diets within the California prison system.<br><br>(Exhibit H, pg. 83 in Opposition to Motion for Summary Judgment). |
| 9. Dr. Bentley placed Mr. Chambers on a gluten free diet in or around July 2018.<br><br>(Aguilera Decl. ¶3.) | 9. Deny. Dr. Bentley did not place plaintiff on a gluten-free diet on or around July 2018.<br><br>(Exhibit D1, pg. 44 in Opposition to Motion for Summary Judgment.) |
| 10. On July 18, 2018, Mr. Chambers saw M. Aguilera and requested a soy free diet.<br><br>(Aguilera Decl. ¶3.) | 10. Deny. Plaintiff did not see Dr. Aguilera on July 18, 2018.<br><br>(Plaintiff claims that Aguilera has no evidence outside his personal declaration). |
| 11. M. Aguilera followed up with Chief Medical Executive Dr. Kuersten<br><br>(Aguilera Decl. ¶4, Dr. Kuersten Decl. ¶3, lines 5-6, ¶4, lines 17-18.) | 11. Deny. M. Aguilera did not follow up with Dr. Kuersten and Dr. Benltey about the meeting and request for a soy diet.<br><br>(Plaintiff claims that M. Aguilera has no evidence this meeting took place beyond his personal declaration). |
| 12. Dr. Kuersten reviewed the IgG test result.<br><br>(Dr. Kuersten Decl. ¶3, line 11.) | 12. Deny. Dr. Kuersten did not review the IgG results from the test plaintiff took on July 3, 2018 because if he did he would have understood that plaintiff is allergic to soy. |

---

[4]     Plaintiff erroneously wrote pg. 76 in his Disputed Facts section. However, he presumably refers to pg. 78, which contains the information he references.

8

| | |
|---|---|
| | (Plaintiff claims Kuersten has not provided any documentation or medical records showing he received the test and refused to have the special soy-free diet provided as ordered by Dr. Bentley). |
| 13. Dr. Kuersten determined that the IgG test is not a reliable test to determine food allergy as it can have false positives. Based on his review of medical literature, Dr. Kuersten determined that the IgE test is a more reliable test for diagnosing food allergy.<br><br>(Dr. Kuersten Decl., ¶ 3, lines 13-16.) | 13. Deny. IgG test is reliable and the IgE test is not more reliable for diagnosing food allergies.<br><br>(Dr. Kuersten has provided no evidence that the IgG test is not reliable or that the IgE is a more reliable test for diagnosing food allergies.) |
| 14. On July 26, 2018, Dr. Kuersten advised Dr. Bentley to discontinue the gluten free diet because it would not eliminate soy from Mr. Chambers's diet.<br><br>(Dr. Kuersten Decl., ¶ 4, lines 19-20.) | 14. Deny. Dr. Bentley ordered that plaintiff be placed on a soy free medical diet, not a gluten free diet. Dr. Bentley discontinued plaintiff's soy free diet on the false grounds that plaintiff refused the food. In actuality, the soy free diet was discontinued because Dr. Kuersten and M. Aguilera refused to order and provide soy free meals to plaintiff.<br><br>(Exhibit D, pgs. 44-45 in Opposition to Motion for Summary Judgment). |
| 15. On August 22, 2018, Dr. Kuersten ordered an IgE blood test to determine if Mr. Chambers had a soy allergy.<br><br>(Dr. Kuersten Decl., ¶ 6, Exhibit 3, Quest Diagnostic Test Results.) | 15. Deny. The blood test taken on August 22, 2018 was never sent to the laboratory. Plaintiff admits that Dr. Kuersten ordered a blood test on August 22, 2018.<br><br>(Exhibit E, pgs. 46-50 in Opposition to Motion for Summary Judgment). |
| 16. The IgE test was performed on August 23, 2018.<br><br>(Dr. Kuersten Decl., ¶6, Exhibit 3, Quest Diagnostic Test Results.) | 16. Deny. Although plaintiff's had blood taken on August 22, 2018, the sample never went to Quest Diagnostics. Dr. Kuersten fabricated the copy of the IgE results.<br><br>(Exhibit G, pgs. 68-72 in Opposition to Motion for Summary Judgment). |

| | |
|---|---|
| 17. The test result showed an undetectable level regarding soy which indicated that Mr. Chambers did not have a soy allergy.<br><br>(Dr. Kuersten Decl., ¶ 6, Exhibit 3, Quest Diagnostic Results.) | 17. Deny.  Plaintiff never tested negative for a soy allergy. Plaintiff is allergic to soy.<br><br>(Exhibit G, pgs. 61-72 in Opposition to Motion for Summary Judgment). |
| 18. As Mr. Chambers does not have a soy allergy, there was no medical reason to order a special diet.<br><br>(Dr. Kuersten Decl. ¶7.) | 18. Deny. Plaintiff is allergic to soy as indicated by his IgG test and the fact Doctor Bentley ordered plaintiff a soy-free diet on July 12, 2018. Doctor Taylor ordered plaintiff medication for his soy allergy on April 15, 2019 and Dr. Ali refilled this prescription on October 12, 2019.<br><br>(Exhibit C, pg. 42, Exhibit D, pgs. 43-45; Exhibit G, pg.  61-72 in Opposition to Motion for Summary Judgment.) |
| 19. M. Aguilera provided adequate and appropriate care during each of his visits with Mr. Chambers.<br><br>(Aguilera Decl. ¶6, lines 11-13.) | 19. Deny. Aguilera did not provide adequate and appropriate care to plaintiff. Aguilera denied plaintiff a soy-free diet despite the fact California Correctional Health Care Services approved CSP Solano to provide therapeutic meals. Aguilera also refused to fulfill Dr. Bentley's request that plaintiff be provided soy free meals.<br><br>(Exhibit H, pg. 83, Exhibit D-1, pg. 44 in Opposition to Motion for Summary Judgment.) |
| 20. At no time did M. Aguilera disregard any serious injury or pain complaints of Mr. Chambers.<br><br>(Aguilera Decl. ¶¶ 2, 5, 6.) | 20. Deny. M. Aguilera lied by claiming that there was no soy free diet at CSP Solano. M. Aguilera also ignored plaintiff having no suitable food because he could not eat the meals that contained soy.<br><br>(Exhibit H, pg. 83 in Opposition to Motion for Summary Judgment.) |
| 21. At no time did M. Aguilera knowingly or intentionally cause Mr. Chambers pain, suffering, or injury.<br><br>(Aguilera Decl. ¶¶ 2, 5, 6.) | 21. Deny. M. Aguilera refused to provide plaintiff with a soy-free diet despite Dr. Bentley's order and plaintiff's medical complaints. M. Aguilera instructed the kitchen staff to provide plaintiff with meals containing soy. M. Aguilera also instructed kitchen staff to provide plaintiff meals that contained soy in a bag that said "no soy". |

| | |
|---|---|
| | (Exhibit F, pgs. 46-60 in Opposition to Motion for Summary Judgment.) |
| 22. Dr. Kuersten provided adequate and appropriate care to Mr. Chambers. (Dr. Kuersten Decl. ¶8.) | 22. Deny. Dr. Kuersten refused to provide plaintiff with a soy-free diet despite his positive allergy test and Dr. Bentley's order for a soy-free diet. (Exhibit D, pgs. 43-45 in Opposition to Motion for Summary Judgment.) |
| 23. Dr. Kuersten ordered the medical testing he felt was necessary to evaluate Mr. Chambers's complaints and ruled out the purported soy allergy. (Dr. Kuersten Decl. ¶¶3-8.) | 23. Deny. Dr. Kuersten ordered a blood test for plaintiff but never sent the results to Quest Diagnostics. Dr. Kuersten also fabricated an allergen report stating that plaintiff did not have a soy allergy. (Exhibit E, pgs. 46-50, Exhibit G, pgs. 61-81) |
| 24. At no time did Dr. Kuersten disregard any serious injury or pain complaints of Mr. Chambers. (Dr. Kuersten Decl. ¶¶3-8.) | 24. Deny. Dr. Kuersten disregarded plaintiff's serious injury and pain complaints regarding his soy allergy. He refused to order plaintiff a soy-free diet despite plaintiff's soy allergy. (Exhibit D, pgs. 43-45, Exhibit H, pgs. 82-90, Exhibit G, pgs. 61-81). |
| 25. At no time did Dr. Kuersten knowingly or intentionally cause Mr. Chambers pain, suffering, or injury of any kind. (Dr. Kuersten Decl. ¶8.) | 25. Deny. Dr. Kuersten knowingly and intentionally caused plaintiff pain by refusing to provide plaintiff with soy-free meals despite knowing about plaintiff's soy allergy. (Exhibit D, pgs. 43-45, Exhibit G, pgs. 61-81) |

## V. DISCUSSION

In their motion for summary judgment, defendants argue: (1) plaintiff presents no genuine dispute of material fact regarding his Eighth Amendment claims against defendants and (2) defendants are entitled to qualified immunity. The Court agrees on both parts.

///

///

1    **A.    Claims Against Dr. Bentley**

2           Under Federal Rule of Civil Procedure 25(a)(1), a civil suit against a deceased

3    party must be dismissed unless a party moves for substitution within 90 days of a service noting

4    death. See FED. R. CIV. P. 25. After the deceased party is dismissed, the action proceeds with the

5    remaining parties. See FED. R. CIV. P. 25(a)(2).

6           Doctor Bentley is deceased. See ECF No. 12; ECF No. 23. Plaintiff received

7    notice of Doctor Bentley's death on July 18, 2019. See ECF No. 12. Thus, plaintiff's ninety-day

8    filing period expired on October 16, 2019. Plaintiff still has not filed a motion for substitution as

9    of July 2, 2020 and therefore plaintiff's claims against Dr. Bentley must be dismissed.

10   **B.    Eighth Amendment Medical Indifference Claim**

11          Defendants argue that plaintiff's Eighth Amendment claim for deliberate

12   indifference to medical needs fails as a matter of law. The Court agrees.

13          Deliberate indifference to a prisoner's serious illness or injury, or risks of serious

14   injury or illness, gives rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 105;

15   see also Farmer, 511 U.S. at 837.  An injury or illness is sufficiently serious if the failure to treat a

16   prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton

17   infliction of pain."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other

18   grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc); see also Doty

19   v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).

20          A difference of opinion between medical professionals concerning the appropriate

21   course of treatment generally does not amount to deliberate indifference to serious medical needs.

22   See Toguchi v. Chung, 391 F.3d 1051, 1059-60 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240,

23   242 (9th Cir. 1989). To establish that a difference of opinion amounted to deliberate indifference,

24   the prisoner "must show that the course of treatment the doctors chose was medically

25   unacceptable under the circumstances" and "that they chose this course in conscious disregard of

26   an excessive risk to [the prisoner's] health." See Jackson v. McIntosh, 90 F.3d 330, 332 (9th

27   Cir.1996); see also Toguchi, 391 F.3d at 1058; Hamilton v. Endell, 981 F.2d 1062, 1067 (9th Cir.

28   1992) (stating that prisoner may demonstrate deliberate indifference if prison officials relied on

12

1    the contrary opinion of a non-treating physician), <u>abrogated on other grounds as stated in</u> Estate

2    of Ford v. Ramirez-Palmer, 301 F.3d 1043 (9th Cir. 2002), <u>overruled on other grounds by</u> Saucier

3    <u>v. Katz</u>, 533 U.S. 194 (2001), <u>overruled in part on other grounds by</u> Pearson v. Callahan, 555 U.S.

4    223, 236 (2009).

5              A difference of opinion between the physician and the prisoner concerning the

6    appropriate course of treatment does not amount to deliberate indifference to serious medical

7    needs. <u>See</u> <u>Toguchi</u>, 391 F.3d at 1058; <u>Jackson</u>, 90 F.3d at 332; <u>Franklin v. Or., State Welfare</u>

8    <u>Div.</u>, 662 F.2d 1337, 1344 (9th Cir. 1981).

9              1.    <u>Defendant Aguilera</u>

10             Defendants claim that plaintiff has failed to demonstrate any genuine dispute as to

11   whether Aguilera was deliberately indifferent to plaintiff's medical needs. In their motion to

12   dismiss, defendants argue that:

13              . . .Mr. Chambers cannot meet his burden to show that M. Aguilera
            acted with deliberate indifference. M. Aguilera saw plaintiff for a dietary
14          consult at the request of Dr. Bentley. M. Aguilera advised Mr. Chambers
            that there was no soy-free diet at the institution. He also followed up with
15          Dr. Kuersten because Mr. Chambers did not have any documented soy
            allergy. There was no act or omission on his part that could support a
16          claim for deliberate indifference.
17          …
                Mr. Chambers is not qualified to give any medical opinion.
18          Jackson, 90 F.3d at 332. He is not a doctor and has no medical training.
            Any conclusion by him about necessary treatment is pure speculation
19          because Mr. Chambers lacks insight into the subjective state of mind and
            knowledge of his providers or anyone else whom he may blame for his
20          condition. Nelson v. Pima Community College, 83 F.3d 1075, 1081-1082
            (9th Cir. 1996)["[m]ere…speculation does not create a factual dispute for
21          the purposes of summary judgment"]; Hutchinson, 838 F.2d at 393
            [plaintiff's conclusory statement insufficient to establish even medical
22          negligence, must less deliberate indifference].
23

24              ECF No. 21-1, pgs. 6-7.

25

26   ///

27   ///

28   ///

                                         13

1     In response, plaintiff states in his opposition that:

2         Plaintiff deny the claim that at no time did M. Aguilera knowingly
      or intentionally cause the Plaintiff pain, suffering, or injury.
3             …On July 12, 2018, Dr. Bentley ordered the Plaintiff placed on a
      therapeutic soy free medical diet, see Exhibit D-1. M. Aguilera refused to
4     order and provide soy-free meals for the Plaintiff as ordered by Dr.
      Bentley, but instead ordered the medical kitchen staff to issue that Plaintiff
5     meals containing the exact things that the Plaintiff is allergic to which is
      soy, see Exhibits F1, F2, F3, F4, F5, F6, F7, with F8 being the bag
6     Plaintiff last meal was given to the Plaintiff in, notice the bag has no soy
      written on it and circled, but Exhibit-F7 clearly highlight the meal contain
7     soybean oil, which the Plaintiff once again could not eat and suffered, and
      to this day the Plaintiff is suffering, for the Plaintiff is forced to (1) either
8     go hungry and suffer the pains of hunger or (2) when unable to fight the
      pains of hunger any longer the Plaintiff is forced to consume mainline
9     meals containing soy, and within a short period of time becoming ill and
      suffering the symptoms of diarrhea and vomiting, for which the Plaintiff is
10    prescribed soy allergy medication to this very day.

11

12    ECF No. 24, pg. 16.

13

14    Plaintiff also states that:

15        Plaintiff deny the claim that at no time did M. Aguilera disregard
      any serious injury on pain complaints of the Plaintiff.
16
          M. Aguilera lied claiming no soy free therapeutic diet is available
17    when Solano prison is approved to provide that at Doctor's orders, see
      Exhibit-H1. From July 13, 2018, to July 26, 2018, M. Aguilera knew the
18    Plaintiff was complaining about not being able to eat the meals given to
      the Plaintiff because they contain soy, and the Plaintiff was forced to go
19    hungry and suffer.

20

21    ECF No. 24, pg. 16.

22

23        The Court agrees with defendants. Plaintiff's argument that there is a genuine issue

24    of material fact rests on faulty analyses. First, plaintiff's only support for his contention that CSP

25    Solano provides a soy-free diet is a general list named "Institutions Providing Outpatient

26    Therapeutic Diets". See ECF No. 24, pg. 83. The general placeholder "outpatient therapeutic

27    diets" does not establish that CSP Solano offered a soy-free diet. In fact, Aguilera informed

28    plaintiff that the only therapeutic diets available at CSP Solano were renal, gluten-free, or hepatic

diets under a doctors' orders. See ECF No. 21-5, pg. 1.  Second, plaintiff's assertion that Doctor

Bentley ordered a soy-free diet is misguided. Although Doctor Bentley wrote that a soy-free diet

would be preferable, his medical order explicitly requests a gluten-free diet for plaintiff. See ECF

No. 24, pg. 44. Aguilera did not have the ability to prescribe plaintiff with the soy-free diet

because there was no such diet available in the facility. Aguilera also did not have the authority to

transfer plaintiff to a facility that provided soy-free diets even if plaintiff tested positive for a soy

allergy. See ECF No. 21-5, pg. 2.

          Plaintiff also claims that Aguilera did not provide sufficient evidence to establish

that he met with plaintiff or that plaintiff requested a soy free diet during the meeting. See ECF

No. 24, pgs. 9-10. Plaintiff further alleges that Aguilera did not provide sufficient evidence to

establish that Aguilera discussed plaintiff's case with Doctor Bentley and Doctor Kuersten. See

ECF No. 24, pg. 11. However, these assertions do not meet the standard of proof necessary to

discredit Aguilera's claims. Although the moving party bears the initial responsibility of

identifying the deficiencies in the nonmoving party's argument, the nonmoving party must prove

there is a genuine dispute of material fact. See Celotex v. Catrett, 477 U.S. 317, 325 (1986);

Matushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The non-moving

party cannot rely on allegations or denial in its pleadings, but instead must tender specific facts in

the form of affidavits or admissible discovery material. See FED. R. CIV. P. 56(c)(1). Aguilera, as

the moving party, has fulfilled his responsibility by providing sworn affidavits that support these

claims. See ECF No. 21-5. Thus, the burden has shifted to plaintiff, as the nonmoving party, to

prove there is a genuine dispute of material fact. Here, plaintiff does not offer any evidence

beyond pointing out alleged deficiencies in the Aguilera's evidence. Plaintiff's claim that

Aguilera's evidence is insufficient cannot establish a genuine dispute of material fact because

plaintiff offers no affirmative evidence of his own. In fact, plaintiff's own exhibits provide a

dated notice of his meeting with Aguilera on June 14th as well as Aguilera's email

correspondence with Doctor Bentley and Doctor Kuersten. See ECF No. 24, pg. 39; ECF No. 24,

pg. 84.

///

1      Plaintiff has not provided sufficient evidence for a reasonable jury to conclude that

2  Aguilera acted with deliberate indifference to plaintiff's health. There is no evidence that

3  Aguilera ignored plaintiff's symptoms. Rather, from the record presented, it appears that Aguilera

4  acted diligently by meeting with plaintiff, discussing plaintiff's case with his superior, and

5  following his superior's orders regarding plaintiff's treatment. Plaintiff's displeasure with the

6  medical professionals' decisions regarding the ultimate course of treatment cannot establish a

7  cognizable Eighth Amendment claim.

8          2.      Defendant Doctor Kuersten

9      Defendants claim that plaintiff has failed to demonstrate any genuine dispute of

10 material fact as to whether Doctor Kuersten was deliberately indifferent to plaintiff's medical

11 needs. In their motion to dismiss, defendants argue that:

12          . . .Mr. Chambers' deliberate indifference claim against Dr.
      Kuersten fails as a matter of law. Dr. Kuersten discontinued the gluten free
13     diet that had been ordered by Dr. Bentley because this diet would have soy
      in it. Dr. Kuersten did not believe the IgG test was reliable for diagnosing
14     a soy allergy. He also ordered further testing to determine whether Mr.
      Chambers actually had a soy allergy as no such allergy was documented in
15     his records. The testing showed that Mr. Chambers did not have a soy
      allergy.
16     …
          Mr. Chambers is not a medical doctor and is not qualified to
17     interpret test results. Differences in opinion regarding treatment between
      an inmate and a physician are insufficient to support a claim for deliberate
18     indifference. Sanchez, 891 F.2d at 242. As Mr. Chambers does not have a
      soy allergy, there was no medical reason to modify his diet. Further, a soy
19     free diet is not available at the institution. Mr. Chambers cannot establish
      the subjective requirement that Dr. Kuersten knew of and disregarded a
20     risk to him.

21     ECF No. 21-1, pg. 7.

22
      In response, plaintiff states in his opposition that:
23

24          Plaintiff deny the claim that at no time did Dr. Kuersten disregard
25     any serious injury or pain complaints of the Plaintiff.
          …Dr. Kuersten did disregard the Plaintiff's serious injury and pain
26     complaints, see Exhibits-D, D1, which show the Plaintiff allergic to soy,
27     and show Doctor Bentley clearly ordered the plaintiff a soy free diet, see

28

1   Exhibit-H1, that authorized Dr. Kuersten to provide the meal, see
2   Exhibits-G13, G13-1, G13-2, G13-3, and G13-4 show that two Doctors
    since this complaint has been filed prescribed the plaintiff six months'
3   worth of soy allergy medication for his ongoing pain and suffering.

4   ECF No. 24, pg. 18.

5   Plaintiff also states that:

6           Plaintiff deny the claim that Dr. Kuersten ordered a test he felt was
7   necessary to evaluate the Plaintiff's allergy to soy, that's a lie and a
    perjury.
8   …
            On August 22, 2018, Dr. Kuersten ordered the plaintiff blood be
9   collected on August 23, 2018. Dr. Kuersten ordered the test cancelled on
    August 23, 2018, at the exact moment that Plaintiff's blood was collected,
10  then Dr. Kuersten falsified a Quest Diagnostics allergen report and placed
    it in the Plaintiff's medical records on August 29, 2018. Dr. Kuersten did
11  not have the blood taken from the Plaintiff on August 23, 2018 at 9:32
12  AM ever sent to be tested as the following exhibit has confirmed, see
    Exhibit-E1 Laboratory Quest misc test, order Details-time study collect
13  8/23/18, 9:32am, stop time 8/23/18, 9:32am, now see Exhibits-G9, G10,
    G11, and G11A, from where the plaintiff was verified by Quest
14  Diagnostics that no such test was conducted upon which they sent the
    copy of the document that Dr. Kuersten placed in the Plaintiff's medical
15  file on August 29, 2018 back to the Plaintiff with Exhibit-G11, there
16  response.

17  ECF No. 24, pg. 17.

18          The Court agrees with defendants. A difference of opinion between a physician

19  and a prisoner concerning the appropriate course of medical treatment does not amount to

20  deliberate indifference to medical needs. See Toguchi v. Young, 391 F.3d 1051, 1058 (9th Cir.

21  2004). Thus, plaintiff's personal opinion regarding the existence of his soy allergy is not relevant

22  to an Eighth Amendment deliberate indifference discussion. At most, plaintiff has established that

23  Doctor Kuersten and Doctor Bentley had a difference of opinion regarding the appropriate form

24  of testing used to diagnose a soy allergy. See ECF No. 21-4; ECF No. 24, pg. 17. Differences in

25  medical opinion alone do not give rise to an Eighth Amendment claim. See Toguchi, 391 F.3d at

26  1059-60. Similarly, plaintiff's evidence that other doctors prescribed him medication labeled "soy

27  allergy" at most establishes a difference of opinion between Doctor Kuersten and those

28  physicians. See ECF No. 24, pgs. 78-82. Doctor Kuersten examined plaintiff's medical record

1    and ordered further testing because he did not believe that the IgG test was sufficient. See ECF

2    No. 21-4, pgs. 2-3. In fact, plaintiff's IgG report expressly stated that the test should not be used

3    to diagnose allergic or atopic diseases except for gluten sensitivity and neonatal sensitivity to

4    milk. Id. Doctor Kuersten did not provide plaintiff with treatment for a soy allergy because

5    plaintiff's test results came back negative. Id. A reasonable jury could not find that Doctor

6    Kuersten's refusal to treat plaintiff for a soy allergy constituted deliberate indifference to

7    plaintiff's medical needs when medical testing confirmed that plaintiff did not have a soy allergy.

8        Plaintiff's argument that Doctor Kuersten fabricated the IgE test results rests on a

9    faulty assumption. Plaintiff's only evidence to support this allegation is a letter from Quest

10   Diagnostics stating that they had no pathology or billing records for plaintiff. See ECF No. 24,

11   pg. 72. Plaintiff uses this lack of pathology or billing records as evidence that Doctor Kuersten

12   never sent his blood test results to Quest Diagnostics and fabricated a report instead. See ECF No.

13   24, pgs. 13-14. However, plaintiff ignores the portion of the letter that states Quest had several

14   medical records on file for plaintiff. Id. In fact, the IgG test results plaintiff references to attempt

15   to establish his soy allergy came from Quest Diagnostics. See ECF No. 24, pg. 43. Because

16   plaintiff has no additional evidence to support this claim, no reasonable jury could find that

17   Doctor Kuersten fabricated plaintiff's test results.

18       Plaintiff further claims that Doctor Kuersten did not provide sufficient evidence to

19   establish that the IgG test is not reliable and the IgE is a more precise method. See ECF No. 24,

20   pg. 11. Plaintiff also claims that Dr. Kuersten did not provide sufficient evidence to prove that he

21   reviewed plaintiff's medical records. Id. However, plaintiff has not met the standard of proof

22   necessary to discredit Doctor Kuersten's claims. Although the moving party bears the initial

23   responsibility of identifying the deficiencies in the nonmoving party's argument, the nonmoving

24   party must prove there is a genuine dispute of material fact. See Celotex v. Catrett, 477 U.S. 317,

25   325 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The

26   nonmoving party cannot rely on the allegations on denials in its pleadings, but instead must

27   tender specific facts in the form of affidavits or admissible discovery material. See FED. R. CIV. P.

28   56(c)(1). Doctor Kuersten, as the moving party, fulfilled his responsibility by providing sworn

affidavits stating that he reviewed plaintiff's medical records and his medical research led him to conclude that IgE was a more suitable test. Thus, the burden has shifted to plaintiff, as the nonmoving party, to prove there is a genuine dispute of material fact. Here, plaintiff does not offer any evidence beyond his allegations. Plaintiff is not a doctor and, absent concrete evidence that plaintiff has not provided, he cannot conclusively determine the reliability of an IgG test or an IgE test.

Further, plaintiff's only support for his argument that Doctor Kuersten did not review his medical record is that:

> Plaintiff deny the claim the claim that Dr. Kuersten reviewed the IgG test results from the soy allergy test the Plaintiff took on July 3, 2018 at 21:00AM because if he had he would have understood as did Drs. Bentley, Taylor, and Dr. Ali that 2.1 means allergic and 2.0 means not allergic…

ECF No. 24, pg. 11.

Plaintiff's assertion that Doctor Kuersten would have agreed with plaintiff's other doctors had he reviewed plaintiff's medical record is conclusory. Conclusory allegations do not establish a genuine dispute of material fact. See Ashcroft v. Iqbal, 556 U.S. 662, 680-681 (2009). As discussed above, plaintiff provides no valid evidentiary support for his claim that Doctor Kuersten was deliberately indifferent to his medical needs. Thus, no reasonable jury could find that Doctor Kuersten's actions constituted an Eighth Amendment violation and Doctor Kuersten is entitled to judgment as a matter of law.

## C.    <u>Qualified Immunity</u>

As discussed above, the Court finds that plaintiff has failed to establish a valid Eighth Amendment medical indifference claim at the summary judgment stage. However, in the event the District Judge finds a genuine dispute as to plaintiff's Eighth Amendment deliberate indifference claims, the undersigned provides the following analysis.

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In general,

1   qualified immunity protects "all but the plainly incompetent or those who knowingly violate the

2   law." Malley v. Briggs, 475 U.S. 335, 341 (1986).  In ruling upon the issue of qualified

3   immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the

4   injury, the facts alleged show the defendant's conduct violated a constitutional right.  See Saucier

5   v. Katz, 533 U.S. 194, 201 (2001).  If a violation can be made out, the next step is to ask whether

6   the right was clearly established.  See id.  This inquiry "must be undertaken in light of the specific

7   context of the case, not as a broad general proposition . . . ."  Id.  "[T]he right the official is

8   alleged to have violated must have been 'clearly established' in a more particularized, and hence

9   more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable

10  official would understand that what he is doing violates that right."  Id. at 202 (citation omitted).

11  Thus, the final step in the analysis is to determine whether a reasonable officer in similar

12  circumstances would have thought his conduct violated the alleged right.  See id. at 205.

13          When identifying the right allegedly violated, the court must define the right more

14  narrowly than the constitutional provision guaranteeing the right, but more broadly than the

15  factual circumstances surrounding the alleged violation.  See Kelly v. Borg, 60 F.3d 664, 667 (9th

16  Cir. 1995).  For a right to be clearly established, "[t]he contours of the right must be sufficiently

17  clear that a reasonable official would understand [that] what [the official] is doing violates the

18  right."  See Anderson v. Creighton, 483 U.S. 635, 640 (1987).  Ordinarily, once the court

19  concludes that a right was clearly established, an officer is not entitled to qualified immunity

20  because a reasonably competent public official is charged with knowing the law governing his

21  conduct.  See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982).  However, even if the plaintiff

22  has alleged a violation of a clearly established right, the government official is entitled to

23  qualified immunity if he could have ". . . reasonably but mistakenly believed that his . . . conduct

24  did not violate the right."  Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001); see

25  also Saucier, 533 U.S. at 205.

26  / / /

27  / / /

28  / / /

20

1      The first factors in the qualified immunity analysis involve purely legal questions.

2    See Trevino v. Gates, 99 F.3d 911, 917 (9th Cir. 1996).  The third inquiry involves a legal

3    determination based on a prior factual finding as to the reasonableness of the government

4    official's conduct.  See Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995).  The district court

5    has discretion to determine which of the Saucier factors to analyze first.  See Pearson v. Callahan,

6    555 U.S. 223, 236 (2009).  In resolving these issues, the court must view the evidence in the light

7    most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff.  See

8    Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

9      The Court finds both defendants are entitled to qualified immunity. The plaintiff

10   has the burden of alleging a violation that has been clearly established that the officers should

11   have been on notice. Luna v. Ridge, 436 F. Supp. 2d 1163, 1173 (S.D. Cal. 2006) ("[b]road

12   generalities in the articulation of the constitutional right at issue . . . are insufficient to identify a

13   clearly established right . . .").  "Except in the rare case of an 'obvious' instance of constitutional

14   misconduct . . . [p]laintiffs must *identify a case* where an officer acting under similar

15   circumstances as [defendants] was held to have violated [plaintiff's constitutional rights]." Sharp

16   v. Cty. of Orange, 871 F.3d 901, 911 (9th Cir. 2017) (emphasis in original) (quoting White v.

17   Pauly, 137 S.Ct. at 552).

18     As discussed above, plaintiff has not sufficiently established that an obvious

19   constitutional violation occurred. Defendants' refusal to provide plaintiff with soy-free meals did

20   not amount to an obvious constitutional violation when a medical test indicated that plaintiff did

21   not have a soy allergy. Thus, plaintiff must demonstrate legal precedent where an officer acting

22   under similar circumstances as defendants was held to have violated plaintiff's constitutional

23   rights. See Sharp v. Cty. of Orange, 871 F.3d 901, 911 (9th Cir. 2017). "In other words, [plaintiff]

24   must point to prior case law that articulates a constitutional rule specific enough to

25   alert *these* [officers] *in this case* that *their particular conduct* was unlawful." Id. However, here,

26   plaintiff only addresses defendants' qualified immunity discussion through a conclusive sentence

27   which states that defendants do not have qualified immunity because they were deliberately

28   indifferent to plaintiff's medical needs. See ECF No. 24, pg. 30. Plaintiff provides no case

21

1  precedent and has therefore clearly failed to meet his burden.

2

3                              **VI. CONCLUSION**

4              Based on the foregoing, the undersigned recommends that Defendant's motion for

5  summary judgment (ECF No. 21) be granted in full.

6              These findings and recommendations are submitted to the United States District

7  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

8  after being served with these findings and recommendations, any party may file written objections

9  with the court.  Responses to objections shall be filed within 14 days after service of objections.

10 Failure to file objections within the specified time may waive the right to appeal.  See Martinez v.

11 Ylst, 951 F.2d 1153 (9th Cir. 1991).

12

13 Dated:  July 13, 2020

14                                        _____
                                         DENNIS M. COTA
15                                       UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

                                          22